IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHARONDA BELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CIVIL ACTION NO. 5:16-cv-407 (MTT) |
| BANK OF AMERICA NA, *et al.*, | ) ) ) |
| Defendants. | ) ) |

# ORDER

Plaintiff Sharonda Bell filed this action alleging that Bank of America, N.A. (BANA), as well as debt collection firms hired by BANA—Fredrick J. Hanna, P.C. (Hanna) and Cooling and Winter, LLC (C&W)[1]—repeatedly called her cell phone in attempt to collect a debt in violation of federal and Georgia law. *See, e.g.*, Doc. 1 ¶¶ 21, 35. The complaint states seven counts:

- Count I against Hanna and C&W for violation of the Fair Debt Collection Practices Act (*id.* ¶¶ 50-52);
- Count II against all Defendants for violation of the Telephone Consumer Protection Act (*id.* ¶¶ 53-65);
- Count III against all Defendants for invasion of privacy by intrusion upon seclusion (*id.* ¶¶ 66-76);
- Count IV against all Defendants for violation of the Georgia Fair Business Practices Act (*id.* ¶¶ 77-83);
- Count V against all Defendants for unreasonable collection practices (*id.* ¶¶ 84-88);
- Count VI against all Defendants for violation of the right to be left alone (*id.* ¶¶ 89-96); and

---

[1] The complaint references "Cooling & Winter LP" and "Cooling & Winter, LLC" interchangeably. *Compare* Doc. 1 ¶ 1 *with* Doc. 1 ¶ 15. The Court chose "Cooling and Winter, LLC" only because Bell named that entity in the style.

- Count VII against all Defendants for punitive damages (*id.* ¶¶ 97-98).[2]

Defendant C&W moved to dismiss Counts III – VI for failure to state a claim. Doc. 7 at 1. Defendant BANA also moved to dismiss Counts III – VI; additionally, BANA moved to dismiss Count II as to any calls made outside the statute of limitations. Doc. 14 at 1, 4.

## I. THE ALLEGATIONS

In her complaint, Bell alleges that beginning January 1, 2012, the Defendants began attempting to collect a defaulted credit card debt owed to BANA, and that within a year, C&W began repeatedly calling Bell's personal cellular telephone using an auto-dialer and pre-recorded messages. Doc. 1 ¶¶ 32, 33, 34. Bell alleges that she "did not have this cell phone number when doing business with [BANA]," so the Defendants "knew or should have known that [they] did not have consent to call [her] cellular telephone." *Id.* ¶¶ 61, 62. The calls continued though she "specifically told Defendants on numerous occasions to stop calling her cell phone number," (*id.* ¶¶ 40, 41), and though the "Defendants knew, or should have known, that [they were] calling a cellular telephone" (*id.* ¶ 55). Bell alleges that she received many "dead air" calls: calls where no agent was on the line. *Id.* ¶ 44. The calls are alleged to have continued until the day Bell filed her complaint, September 13, 2016. *Id.* ¶ 35. She alleges "actual injury . . . including, but not limited to, reduced device storage space, data usage, plan usage, tied up telephone line, lost time tending to the unwanted telephone calls and responding to Defendants' unlawful conduct, and the invasion of privacy by calls continuing after she informed Defendants to stop calling." *Id.* ¶ 47.

Bell asserts that the Defendants invaded her privacy by the repeated and unlawful nature of their attempts to collect the debt she owes. *Id.* ¶ 69. Bell mentions, particularly, the Defendants' "skip tracing her cellular number, and calling [her] cellular

---

[2] Bell's responses state that her claims under Counts V and VI are part of her invasion of privacy claim (Count III). Docs. 18 at 6; 19 at 6-7.

telephone" after she "communicated . . . that she wanted to cease communications." *Id.* ¶¶ 69, 72. Bell claims she "was alarmed that Defendants would go and search out for private information about her like her private cellular phone number." *Id.* ¶ 71. She alleges that calling a private cellular number after being asked to stop would be highly offensive to a reasonable person in light of "the extreme volume of the calls, . . . the duration of time of the calling and . . . the use of pre-recorded messages for years and years." *Id.* ¶ 85, 87. Bell claims entitlement to actual and punitive damages. *Id.* ¶¶ 76, 86, 88, 94, 96.

## I.  DISCUSSION

### A.  Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a

claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

**B.     Invasion of Privacy**

Bell argues that the Defendants' collection efforts constitute an invasion of privacy by intrusion upon seclusion under Georgia law. Docs. 1 ¶¶ 69, 74; 18 at 3; 19 at 3. The Defendants first sought dismissal because Bell did not allege a physical intrusion under Georgia law.[3] Bell responded that under *Anderson v. Mergenhagen*, 283 Ga. App. 546, 642 S.E. 2d 105 (2007), physical intrusion is not required where an otherwise seemingly harmless act is repeated to a degree that it becomes "a course of hounding the plaintiff." Doc. 18 at 4; *see also* Doc. 19 at 4. Bell relies on two circumstances—surveillance such as in *Anderson*, and, as *Anderson* mentioned, telephone calls that 'amount to a course of hounding the plaintiff' and become 'a substantial burden to [her] existence.'" Doc. 18 at 4 (quoting *Anderson*, 283 Ga. App. at 552, 642 S.E.2d at 110); *see also* Doc. 19 at 4.

In *Anderson*, the defendant "repeatedly follow[ed] a woman, who was pregnant for part of that time and was frequently alone or with her small children, photographing her at least 40 times, repeatedly causing her to become frightened and upset, to flee to her home, and to call the police seeking help." *Anderson*, 283 Ga. App. at 552, 642 S.E.2d at 110. The court held that there was a "jury question as to whether the defendant's actions amounted to 'a course of hounding the plaintiff' that intruded upon her privacy." *Id.* As Bell notes, the court in *Anderson* stated that "Georgia law does not require physical intrusion to establish a claim of invasion of privacy," and quoted a

---

[3]     Defendant BANA initially asserted that Bell's claim fails because the Georgia tort of invasion of privacy by intrusion upon seclusion requires allegations of a physical intrusion which is analogous to trespass. Doc. 14 at 5-6. On the other hand, Defendant C&W initially argued that "courts have consistently adhered to the requirement of a 'physical' intrusion but with the understanding that the 'physical' requirement can be met by showing the defendant conducted surveillance on the plaintiff or otherwise monitored the plaintiff's activities." Doc. 7 at 4. C&W maintained that Bell's claim should fail because she did not allege either a physical intrusion or surveillance. *Id.*

section of the *Restatement (Second) of Torts* indicating that repeated phone calls might be sufficient to state an invasion of privacy claim.[4]  *Id.*

### 1.  Bell's unreasonable surveillance theory

As Bell recognizes, mere surveillance is not a privacy violation under Georgia law.  Docs. 18 at 4; 19 at 4.  Rather, the surveillance must be *unreasonable*, such as surveillance aimed to frighten or torment the subject.  *See Anderson*, 283 Ga. App. at 551, 642 S.E.2d at 110.  Surveillance "reasonably limited and designated to obtain information needed" for a legitimate purpose, on the other hand, is not actionable.  *Id.* at 551-52, 642 S.E.2d at 110 (quoting *Ellenberg v. Pinkerton's, Inc.*, 130 Ga. App. 254, 257, 202 S.E.2d 701, 704 (1973)).

Bell maintains that C&W conducted surveillance on her when it learned that she had changed cellular phone numbers.  Docs. 18 at 5; 19 at 5.  Bell reasons that "[p]resumably, when [she] failed to answer the line for periods of time, C&W conducted continued surveillance for an unknown period of time to determine whether [her] phone number had changed."  Doc. 18 at 5; *see also* Doc. 19 at 5.  And because "[c]onfidential, personal cellular numbers can only be obtained from some unknown

---

[4]  Comment D and accompanying Illustration 8 of the quoted *Restatement* section state in relevant part:

> [Comment D:]
>
> There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object.  Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt.  It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.
>
> Illustration [8]:
>
> *A*, a landlord, calls upon *B*, his tenant, at nine o'clock on Sunday morning, to demand payment of the rent, although he knows that *B* is not ready to pay it and that *B* objects to such a visit on Sunday.  *B* is seriously annoyed.  This is not an invasion of *B*'s privacy.

Restatement (Second) of Torts § 652B (1977).

source," C&W "presumably" "hired some sort of detective to search over and over again to monitor 'the grid' looking for [her]." *Id.*

Defendant C&W argues that Bell's surveillance argument is unsupported by her complaint because it "contains no allegation that [C&W] . . . conducted surveillance or otherwise monitored her," and "'surveillance' is brought up for the first time in Plaintiff's opposition brief." Doc. 20 at 1. Defendant BANA concurs, stating that "Plaintiff includes for the first time in her response an argument that Defendants must have conducted surveillance to obtain a telephone number she did not give them." Doc. 21 at 4.

But Bell's surveillance theory does not fail for these reasons. Bell's complaint alleges "alarm[] that Defendants would go and search out for private information about her like her private cellular phone number." Doc. 1 ¶ 71. And though Bell never mentions a "detective" or "the grid" in her complaint, this is apparently encompassed by her allegation that the Defendants engaged in "skip tracing her cellular number." *Id.* ¶ 69. Bell's surveillance theory does, however, fail. It fails because her factual allegations do not demonstrate any *unreasonable* surveillance. Bell does not allege that the Defendants had no legitimate purpose in obtaining her cellular number in their attempts to collect the debt she owes. Bell does not allege that the Defendants' search for her cellular number was not reasonably limited to accomplish this goal. Nor does Bell allege that the Defendants' search for her cellular number was conducted in a way deliberately calculated to frighten or torment her. Accordingly, Bell's "alarm" that a creditor did not have, but then obtained, her cellular phone number does not state a claim for unreasonable surveillance within the holding of *Anderson*.

### 2. Bell's substantial-burden theory

In *Benedict v. State Farm Bank, FSB*, the Georgia Court of Appeals applied *Anderson* on similar facts, and in doing so, addressed *Anderson*'s reference to the *Restatement* regarding harassing telephone calls. 309 Ga. App. 133, 709 S.E.2d. 314 (2011). In that case, the plaintiff—Benedict—sued State Farm Bank, FSB "alleging in

his complaint that State Farm representatives placed more than a hundred harassing calls to his telephone number and asserting that this conduct amounts to a tort." *Id.* at 133, 709 S.E.2d. at 316.  Benedict alleged that after he defaulted on his credit card balance owed to State Farm,

> On August 13, [2006] a representative of State Farm telephoned Benedict about the past due payment, and Benedict told this representative that he planned to pay off the outstanding balance of the credit card account in September. On August 20, a second State Farm representative telephoned Benedict, who again said that he planned to pay off the outstanding balance soon. Benedict also told this representative not to call him again. According to Benedict, the representative responded that State Farm would not honor his request and would, in fact, telephone him as often as it liked.
>
> Benedict claims that, between August 20 and September 6, State Farm representatives telephoned him from a "blocked number" on 168 occasions. Benedict says that these representatives "hung up the telephone" without speaking whenever he answered and did not leave any message whenever his answering service picked up the calls. Benedict does not say how many calls he answered, how many were picked up by his answering service, and how many went unanswered, and he does not allege the times at which the calls were placed. Benedict alleges that, as a result of these calls, he suffered $60,000 in "actual damages," but he does not say how exactly the making of these calls injured him.

*Id.* at 134-35, 709 S.E.2d. at 316-17.

The court of appeals affirmed the dismissal of Benedict's invasion of privacy claim.  *Id.* at 138, 709 S.E.2d at 319.  The court reasoned that "Benedict does not allege . . . that State Farm made any 'physical intrusion which is analogous to trespass' or that State Farm 'conducted surveillance on [Benedict] or otherwise monitored [his] activities,'" but rather "only that State Farm representatives placed repeated calls to his telephone number, not for any legitimate business purpose, but merely to harass, bother, and annoy him."  *Id.* at 136, 709 S.E.2d at 318.  The court continued: "We do not

doubt that such a pattern of conduct may be a substantial annoyance to the recipient of the calls and may disturb his peace and tranquility.  But Benedict does not point us to any case—and we have not found any case—in which the Supreme Court or our Court has held that merely annoying someone or disturbing his peace or tranquility, without more, amounts to an actionable invasion of privacy." *Id.* at 136-137, 709 S.E.2d at 318.

The court rejected Benedict's reliance on *Anderson*'s statement that "a relatively harmless activity can become tortious with repetition, as when, for example, telephone calls 'are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff,' and becoming 'a substantial burden to his existence.'" *Id.* at 137, 709 S.E.2d at 318.  The court reasoned that because *Anderson* did not involve harassing telephone calls, "the statement on which Benedict relies is mere dicta." *Id.* But, "even if repeated and harassing telephone calls might in some circumstances amount to an actionable intrusion," the claim should be dismissed because Benedict "does not allege that the telephone calls worked any particular injury, much less that they were a 'substantial burden to his existence.'" *Id.* at 138, 709 S.E.2d at 318.

Bell argues that the repeated phone calls she received should be considered an actionable intrusion because they were made to her private cellular line for over four years, continued after she asked the Defendants to stop, and were perpetrated through "an illegal phone system."  Docs. 18 at 5-6; 19 at 5-6.  In addition, Bell argues that she, unlike Benedict, has alleged that the Defendants' conduct "caused harm to [her] wellbeing," and has accordingly alleged a substantial burden on her existence.  *Id.*

BANA argues that Bell's claim should fail as a matter of law because Bell has not alleged that the calls were "a substantial burden to [her] existence."  Doc. 21 at 4.  The Court agrees.

Bell did not expressly allege in her complaint that the Defendants' conduct had created a substantial burden on her existence; more importantly, however, she did not allege facts rendering any such claim plausible.  Bell's specific alleged injuries are

"reduced device storage space, data usage, plan usage, tied up telephone line, [and] lost time tending to the unwanted telephone and responding to Defendants' unlawful conduct."  Doc. 1 ¶ 47.  Other than that, Bell vaguely alleges "emotional harm" (*id*. ¶ 70), "alarm[]" (*id* ¶ 71), and "harm to [her] emotional wellbeing" (*id* ¶ 86).  Bell's injures are analogous to the injuries alleged in *Benedict.*  Accordingly, Bell has failed to allege facts stating a plausible claim that the Defendants' calls created a substantial burden on her existence under Georgia law.

For these reasons, the Court holds that Bell has failed to state a claim for invasion of privacy under Georgia law.

### III.  CONCLUSION

BANA and C&W's motions to dismiss (Docs. 7; 14) are **GRANTED**.  Bell's invasion of privacy claims against BANA and C&W in Count III are **DISMISSED without prejudice**.

Bell states in her responses that she is no longer pursuing any claim under Count IV and is not pursuing any claim under Counts V and VI separate from her invasion of privacy claim.  Docs. 18 at 6; 19 at 6-7.  Accordingly, Bell's claims in Count IV against all Defendants and Bell's claims against BANA and C&W in Counts V and VI are **DISMISSED without prejudice** .

As to BANA's motion for dismissal of Count II to the extent the calls were placed before the four-year statute of limitations, September 13, 2012, Bell acknowledges that "only calls within four years of the filing of the complaint fall under the TCPA."  Doc. 19 at 3.  Accordingly, Bell's claims against BANA for TCPA violations under Count II based on calls placed before September 13, 2012 are **DISMISSED without prejudice**.

**SO ORDERED**, this 26th day of January, 2017.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
